RECORD NUMBER: 16-4320

# United States Court of Appeals
### *for the*
# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

JERMAINE R. WILLIAMS,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

# OPENING BRIEF OF APPELLANT

GREGORY R. SHELDON
BAIN SHELDON, PLC
9030 Three Chopt Road
Suite B
Richmond, VA 23229
(804) 282-8625
gsheldon@bainsheldon.com

*Counsel for Appellant*

CP  COUNSEL PRESS • VA – (800) 275-0668

# TABLE OF CONTENTS

Table of Authorities ......................................................................................... ii

Jurisdictional Statement ................................................................................... 1

Statement of the Issues.................................................................................... 2

Statement of the Case...................................................................................... 3

     Statement of Facts.................................................................................... 3

Summary of Argument .................................................................................... 8

Argument......................................................................................................... 9

Conclusion ...................................................................................................... 23

Statement Regarding Oral Argument .............................................................. 24

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**Cases**

Gall v. United States,
    552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) ............................... 18

Rita v. United States,
    551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007) ........................... 19

United States v. Burgos,
    94 F. 3d 849 (4th Cir. 1996) ................................................................... 13, 14

United States v. Bynum,
    604 F.3d 161 (4th Cir. 2010) ........................................................................ 19

United States v. Carreon,
    626 F.2d 528 (7th Cir. 1980) ......................................................................... 10

United States v. Carter,
    601 F.3d 252 (4th Cir. 2010) ........................................................................ 17

United States v. Hagen,
    913 F.2d 1278 (7th Cir. 1990) ....................................................................... 17

United States v. Hobbs,
    136 F.3d 384 (4th Cir. 1998) ........................................................................ 13

United States v. John,
    935 F.2d 644 (4th Cir. 1991) ........................................................................ 17

United States v. Jones,
    887 F.2d 492 (4th Cir. 1989) ........................................................................ 10

United States v. Lanham,
    631 F.2d 356 (4th Cir. 1980) .......................................................................... 9

United States v. Lynn,
    592 F.3d 572 (4th Cir. 2010) ........................................................................ 18

United States v. Mendoza-Mendoza,
    597 F.3d 212 (4th Cir. 2010) ........................................................................ 19

United States v. Pardo,
    204 U.S. App. D.C. 263, 636 F.2d 535 (D. C. Cir. 1980) ........................... 14

United States v. Rooks,
    596 F.3d 204 (4th Cir. 2010) ........................................................................ 16

United States v. Rusher,
    966 F.2d 868 (4th Cir. 1992) ........................................................................ 14

United States v. Samad,
    754 F.2d 1091 (4th Cir. 1984) ..................................................................... 14

United States v. Slade,
    631 F.3d 185 (4th Cir. 2011) ........................................................................ 16

United States v. Taylor,
    487 U.S. 326, 108 S.Ct. 2413, 101 L.E.2d 297 (1988) ............................... 10

United States v. Thomas,
    305 Fed. App'x 960 (4th Cir. 2009) ............................................................ 12

**Rules, Statutes and Other Authorities**

18 U.S.C. § 922(g)(1)................................................................................... 13

18 U.S.C. § 3162 ............................................................................................ 9

18 U.S.C. § 3553 ..................................................................................... 18, 19

U.S.S.G. § 2A1.4 .......................................................................................... 17

U.S.S.G. § 3C1.2 ..................................................................................... 16, 17

U.S.S.G. § 4A1.3 ..................................................................................... 19, 20

## <u>JURISDICTIONAL STATEMENT</u>

This is a criminal matter with an automatic right of appeal pursuant to 28 U.S.C. 1291.  Appellant timely filed his notice of appeal within the time period prescribed by the Federal Rules of Appellate Procedure.  This Appeal is from a final Order that disposed of all claims with respect to the parties.

## **STATEMENT OF THE ISSUES**

Whether the trial court erred by denying Williams' motion to dismiss on Speedy Trial Grounds.

Whether the evidence was sufficient to prove that Williams knowingly and intentionally possessed a firearm after being convicted of a felony.

Whether the trial court erred by affirming an enhancement for reckless endangerment during flight.

Whether the trial court erred by refusing to allow a variant sentence based on an overstatement of criminal record and length of pretrial detention.

## **STATEMENT OF THE CASE**

### **Statement of the Case**

A two (2) count indictment was returned against Jermaine Rodney Williams ("Williams"). These charges were dismissed based upon a *pro se* motion filed by Williams, alleging violation of his Speedy Trial Rights. Subsequently, a three (3) count Indictment was returned against Mr. Williams.

The appellant entered pleas of not guilty to Counts One, Two and Three and proceeded to trial by jury. The appellant was convicted of Count I and acquitted of Counts Two and Three. On May 9, 2016, the appellant was sentenced to ninety-five (95) months in prison, three years of supervised release and a special assessment of $100.00.

The appellant timely noted his appeal.

### **Statement of Facts**

A.    Hearing of December 21, 2015

Prior to this hearing, Williams filed a Motion to Dismiss on Speedy Trial Grounds. App. 50. Williams also filed a transcript of the earlier hearing held before Judge Spencer. App. 10-46. Williams appeared on December 21st to argue the merits of this and several other motions. Williams argued that at the time his original trial date was canceled, no plea agreement had been reached or statement of facts executed. App. 111. Witnesses were called off without Williams' consent.

3

Tr. 114. The Government presented no evidence that Williams ever accepted any plea agreement or that a plea agreement was ever discussed with Williams. App. 121. The Government conceded it was in error to assume there was some agreement. Tr. 121. The Government alleged that Williams' constitutional rights would have been violated had trial proceeded as originally scheduled, based upon ineffective assistance of counsel. App. 132. This was in contrast to statements made at the earlier hearing, in which the Government stated "she has been a very strong advocated for her client." App. 16. The trial court considered the statutory factors and denied the motion. App. 136-138.

B.    Hearing of January 26, 2016

Williams proceeded to trial on January 26, 2016. The Government first called Virgil Burton ("Burton") of the Richmond Police Department, who observed Williams on December 21, 2013, in the County of Chesterfield. App. 183. Burton was aware that Williams had outstanding felony warrants. App. 184. Burton called a Richmond detective to check on the status of the warrants. App. 185. Burton provided details about Williams' vehicle. App. 186. Burton pointed out the vehicle to the Chesterfield officer who arrived. App. 187.

The Government next called Officer Byerly ("Byerly") with the Chesterfield Police Department. App. 189. Byerly received a call about a possible wanted subject at the Chesterfield Towne Center. App. 190. The Richmond officer pointed

4

out the car Williams was driving. App. 191. Byerly began following Williams'
vehicle. App. 192. Byerly activated his emergency equipment and attempted to
stop Williams, to no avail. App. 193. After making a series of turns, the vehicle got
back onto Research Road and took off at a very high rate of speed. App. 193. The
speed limits were between 25 and 35 miles per hour and Williams got up to 50-55
miles per hour on that road. App. 194. The vehicle ran a stop sign and took a left
onto South Lake Boulevard. App. 194. On this road, the vehicles reached speeds
"probably around 75 range." App. 195. He observed the driver stick his left hand
out the window and drop a firearm. App. 195. The pursuit continued for a short
distance and they were able to take the driver into custody. App. 195. Williams
was stopped less than a half mile from where Byerly said he dropped the firearm.
App. 195.

On cross-examination, Byerly acknowledged he was checking his speed,
watching side streets for cars, and paying attention to whether there were any
traffic control devices. App. 202-203. He acknowledged using the word "thrown"
in his written report when describing how the firearm came out of the vehicle.
App. 204. The firearm was located in the middle of the lane, four feet from the
double yellow line. App. 206.

Officer Lewis Hagen ("Hagen") testified that he was working on December
21, 2013. App. 211. He received a call and followed Byerly who was the lead car.

5

App. 212. He took over "radio traffic" once Williams failed to stop. App. 213. He heard someone state a firearm had come out of the vehicle. App. 216. He was the first officer to have contact with Williams. App. 217.

Hagen admitted he was in the vehicle immediately behind Byerly, and was within a car length of Byerly's vehicle. App. 222. He did not lose sight of Williams' vehicle. App. 222. He did not observe anything thrown or dropped from the vehicle at any point in time. App. 222. He did not see anything lying on the ground as he drove past. App. 222.

Officer John Bowry ("Bowry") testified that he joined the pursuit on December 21, 2013. App. 232. He located the firearm and waited with it until the forensic unit came to the scene. App. 234. He was coming from the opposite direction and did not see a gun being thrown. App. 238. He responded to where he found a gun when he realized that the officer who was supposed to stop had not stopped. App. 231. Bowry explained that "usually the third vehicle, if something is thrown such as a firearm, will stop with the item." App. 239. When he handled the firearm, he wore gloves so not to interfere with any DNA or fingerprints that might be recovered from the firearm. App. 240.

Sandy Simmons ("Simmons") testified she was a forensic investigator with Chesterfield County. App. 243. She was called out to the scene. App. 244. She observed a firearm on scene and collected it. App. 246. She identified a series of

6

photographs taken at the scene. App. 246-249. In her written report, Simmons wrote that it was reported to her that Williams was seen throwing an object out of the vehicle. App. 256. No DNA or fingerprints were recovered from the firearm. App. 257-258.

The parties read a stipulation to the jury which included a concession that Williams had previously been convicted of a felony offense and that the object recovered was in fact a firearm. App. 264-265.

C.    Hearing of May 9, 2016

Williams appeared for sentencing on May 9, 2016. App. 588. Prior to sentencing, he filed an objection to the enhancement for reckless endangerment during flight and requested a variant sentence, arguing that his criminal history was overstated based upon misdemeanor convictions for driving suspended, assault and battery and marijuana possession. The trial court overruled these objections and arguments and sentenced Williams as described above.  App.  592; 619.

## <u>SUMMARY OF ARGUMENT</u>

The trial court erred by denying Williams' Motion to Dismiss on Speedy Trial Grounds, as the original judge had not gone through the requisite statutory analysis to determine whether the charges should be dismissed with or without prejudice. Williams had never consented to the jury being called off and had not reached any plea agreement with the Government, as conceded by the Government.

The evidence was insufficient to prove Williams possessed the firearm recovered. One officer testified he observed Williams drop the firearm; no other officer observed this occur and no scientific evidence confirmed Williams' possession of the firearm.

The trial court erred by enhancing Williams' sentence for reckless endangerment during flight, as his flight amounted to no more than ordinary flight.

The trial court erred by refusing to allow a variant sentence based on the overstatement of Williams' criminal record and the length of his pretrial detention. Williams was held for in excess of two years prior to trial.

# ARGUMENT

## I.    The Speedy Trial Act

### A.    Standard of Review

The district court's interpretation of the Speedy Trial Act is a question of law, which the Court will review de novo. United States v. Leftenant, 341 F.3d 338, 343 (4th Cir. 2003).

### B.    Discussion

Williams maintains that the previous dismissal of these indictments should have been with prejudice. The defendant had no means by which to appeal Judge Spencer's ruling that the dismissal be without prejudice, assuming without conceding that was the decision Judge Spencer reached. See United States v. Lanham, 631 F.2d 356 (4th Cir. 1980)(holding that dismissal without prejudice is not immediately reviewable).

The Speedy Trial Act provides that in determining whether to dismiss a case with or without prejudice:

> . . . the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. Section 3162(a)(2). Judge Spencer clearly addressed the "facts and circumstances" leading to the dismissal, but did not address the remaining two

9

factors.

Williams maintains that review of each of these factors should have resulted in a dismissal with prejudice, resulting in a bar of the instant prosecution. In United States v. Taylor, 487 U.S. 326, 108 S.Ct. 2413, 2419, 101 L.E.2d 297 (1988), the Supreme Court stated "[w]here, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case, and . . . clearly articulate their effect in order to permit meaningful appellate review."

The first factor to consider is the seriousness of the crime; Williams concedes that the offense of possession of firearm by a felon is a serious offense. "Where this is true, the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay." United States v. Jones, 887 F.2d 492 (4th Cir. 1989)(quoting United States v. Carreon, 626 F.2d 528 (7th Cir. 1980)). Williams asks the court to consider the delay caused by the Government's failure to be prepared for trial on September 15, 2015, in light of the fact that the offense of conviction occurred on December 21, 2013. The Government conceded that it erroneously relied on representations of Williams' then-counsel in requesting that the jury be called off. There was no dispute that Williams had been incarcerated since October 24, 2014, on charges that began as part of state prosecutions. At no time did Williams consent to the calling off of his jury; such a belief by the

10

Government was belied by their own representations regarding the recorded jail calls. Williams wanted his day in court, for an offense that had occurred nearly two years earlier, and was denied this right through no fault of his own.

Judge Spencer clearly addressed the second factor, determining that there had been no acceptance of a plea agreement. Judge Spencer found that the government's belief the plea agreement had been accepted was ". . . below the level of formality that would be appropriate in something like this." App. 45. Based on an email sent by prior counsel, the Government called off the witnesses and jury trial, denying the defendant his right to a speedy trial. While Judge Gibney relied heavily upon the email sent by previous counsel, at no time did Williams consent to the continuance of his trial. Reliance on this email was clearly misplaced; counsel indicated she was on her way to see Williams, not that she had obtained his consent to calling off the jury trial. At the time of the originally scheduled trial, he had been incarcerated for nearly eleven (11) months. He had not signed a plea agreement or a statement of facts. In fact, the evidence adduced at the December 21st hearing appeared to demonstrate that counsel had called off the jury before even consulting with Williams. The Government conceded that it was in error to assume there was an agreement. The Government argued that Williams' constitutional rights would have been violated by proceeding to trial, as he would have not been provided effective assistance of counsel. As indicated above, the

11

Government argued at the earlier hearing that prior counsel had been a strong advocated for her client. Whether there was ineffective assistant or not, it is clear that Williams was no way in fault for the delay of his jury trial.

In consideration of the third and final factor, the delay clearly prejudiced Williams, as his trial was pushed back in excess of ninety (90) days from when it was originally scheduled, based upon his exercise of a clear statutory right. Williams scheduled trial date was two years to the day from the alleged offense date. As indicated above, Williams had been held on the charges that comprised his federal indictment since October of 2014—nearly fourteen months from his arrest until his scheduled trial. Williams concedes that these offenses originated in state court, but his liberty was curtailed and then his trial was continued without his consent. Williams submits the record is clear that he did not consent to his constitutional right to a trial by jury being given up on his behalf. After the dismissal, Williams was subjected to an additional charge by way of the subsequent indictment, and his liberty was curtailed pretrial for an additional ninety (90) days.  It seemed clear that when Judge Spencer stated that this conduct was " . . . below the level of formality that would be appropriate in something like this," he was referencing prosecutorial neglect that caused the delay. United States v. Thomas, 305 Fed. App'x 960, 964 (4th Cir. 2009).

Williams submits that based on the foregoing, the trial court should have

dismissed the indictment with prejudice.

## II. Sufficiency of the Evidence

### A. Standard of Review

When addressing sufficiency of the evidence challenges, this Honorable Court must affirm the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80, 62 S. Ct. 457, 86 L. Ed. 680 (1942). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (1996) (en banc). Thus, "[the court] shall reverse a verdict [only] if the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." Id. Williams submits that there was insufficient evidence.

### B. Discussion

Williams was charged with a violation of 18 U.S.C. § 922(g)(1), which makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm, which has been shipped or transported in interstate commerce. 18 U.S.C. § 922(g)(1) (2000); see also United States v. Hobbs, 136 F.3d 384, 390 (4th Cir. 1998).Williams does not challenge his status as a convicted felon, and in fact,

stipulated to his prior conviction. The question presented by Williams is whether sufficient evidence existed for the jury to find beyond a reasonable doubt that he possessed the weapon charged in the indictment. Possession may be actual or constructive. United States v. Rusher, 966 F.2d 868, 878 (4th Cir. 1992). Constructive possession is established if it is shown "that the defendant exercised, or had the power to exercise, dominion and control over the item." Id. The possession can be shared with others. United States v. Burgos, 94 F. 3d 849, 873 (4th Cir. 1996). However, mere presence at the location where contraband is found is insufficient to establish possession. United States v. Samad, 754 F.2d 1091, 1096 (4th Cir. 1984). "There must be some action, some word, or some conduct that links the individual to the [contraband items] and indicates that he had some stake in them, some power over them. There must be something to prove that the individual was not merely an incidental bystander." United States v. Pardo, 204 U.S. App. D.C. 263, 636 F.2d 535, 549 (D. C. Cir. 1980).

One witness, namely Byerly, testified that he observed Williams drop a firearm from the vehicle as the pursuit went on. Byerly acknowledged he had used different verbage in his written report, which was written much closer in time than his trial testimony, in excess of two years later. Specifically, Byerly stated that his prior report indicated that he observed Williams "throw" the object from the vehicle. This distinction is important, as the location of recovery would most likely

14

vary depending on action observed. Byerly acknowledged he was watching his
speedometer, other traffic and for road signs as he pursued Williams, at speeds he
testified were around seventy miles per hour.

It is important to view Byerly's testimony in light of the other evidence the
Government presented on this issue. Three other police officers testified about
what they observed. Hagen, who was a passenger in the vehicle behind Byerly, did
not observe anything thrown from the vehicle, nor did he observe anything on the
ground as they drove past. Hagen was a car length behind Byerly and did not
observe any of the actions described by Byerly. Bowry, who was facing the pursuit
from the opposite direction, did not observe anything thrown from the vehicle.
Simmons testified that no scientific evidence was recovered from the firearm.
Significantly, Simmons testified that she spoke with officers on scene and that her
written report indicated an "object" had been thrown from the vehicle. The report
did not indicate that a firearm had been thrown from the vehicle, an important
distinction.

The only evidence that Williams possessed the firearm in question came from
Byerly, and his testimony was not corroborated in any significant respect by the
other evidence presented by the Government. In fact, Williams submits that the
testimony from Hagen, who was immediately behind Byerly's vehicle, directly
contradicts Byerly's testimony. No other witness observed the weapon come from

15

the vehicle, no scientific evidence tied Williams to the firearm and the forensic examiner's report indicated an "object," not a firearm, was thrown from the vehicle. In light of this evidence, Williams submits that the jury erred by finding his guilt beyond a reasonable doubt.

### III.    The Reckless Endangerment Enhancement

#### A.    Standard of Review

In assessing a Guidelines enhancement, "[the court] review[s] findings of fact for clear error and legal decisions de novo." United States v. Rooks, 596 F.3d 204, 210 (4th Cir. 2010) (internal quotation marks omitted). Under the clear error standard of review, this Court "will only reverse if left with the definite and firm conviction that a mistake has been committed." United States v. Slade, 631 F.3d 185, 188 (4th Cir. 2011)

#### B.    Discussion

Williams maintains that the trial court erred by affirming the two point adjustment pursuant to U.S.S.G. § 3C1.2 for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement officers."

Byerly testified that after making a series of turns through a parking lot, Williams took off at a high rate of speed, which he described as between 50 and 55. He later stated that Williams was driving in the 75 range. Three separate

16

officers testified about the pursuit. None of the three officers that testified regarding this incident indicated that there was any accident or near accident, or that any vehicle or pedestrian was required to take evasive action to avoid the defendant's vehicle. Once the defendant was stopped and his door opened, Hagen testified that the defendant was compliant with the commands of law enforcement. The Government's evidence was that the pursuit was of relatively brief duration and distance. The trial court relied on the speed and time of day in reaching its conclusion that there was a substantial risk of death or serious bodily injury.

"Mere flight from an arresting officer would not, by itself, warrant an enhancement. . . . The addition of § 3C1.2 providing for an enhancement for reckless endangerment during flight made the absence of an enhancement for ordinary flight explicit." United States v. John, 935 F.2d 644, 648 (4th Cir. 1991)(quoting United States v. Hagen, 913 F.2d 1278, 1285 (7th Cir. 1990). "An individual's acts are considered 'reckless' when he 'was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard the risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.'" United States v. Carter, 601 F.3d 252, 255 (4th Cir. 2010)(quoting U.S.S.G. §§ 2A1.4 cmt. n.1, 3C1.2 cmt. n.2.

Williams maintains that his actions, over a brief period of time and over a brief distance, amounted to no more than mere flight from law enforcement and

therefore that application of this adjustment is inappropriate. There was no accident or near accident, and no vehicles made evasive maneuvers during this brief pursuit. In fact, there was no evidence that any vehicles other than police vehicles were around when Williams reached 70 miles per hour. There was no evidence any pedestrians or other drivers were endangered, nor any evidence that the Williams' actions created the "substantial" risk of endangerment. Accordingly, Williams submits that the trial court erred in finding his base offense level was 20, and respectfully requests that this Honorable court reverse and remand this matter for a new sentencing hearing with the appropriate base offense level.

## IV.   **The Variant Sentence**

### A.   **Standard of Review**

The Court reviews Williams' sentence for reasonableness, applying an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 46, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). This review requires consideration of both the procedural and substantive reasonableness of the sentence. Id. at 51. The Court will first assess whether the district court properly calculated the advisory Guidelines range, considered the factors set forth in 18 U.S.C. § 3553(a) (2006), analyzed any arguments presented by the parties, and sufficiently explained the selected sentence. Id. at 49-51; see United States v. Lynn, 592 F.3d 572, 575-76 (4th Cir. 2010). If there is no procedural error, the Court reviews the substantive

18

reasonableness of the sentence, "examin[ing] the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010). If the sentence is within the defendant's properly calculated Guidelines range, the Court will apply a presumption of substantive reasonableness. United States v. Bynum, 604 F.3d 161, 168 (4th Cir. 2010); see Rita v. United States, 551 U.S. 338, 347, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007) (permitting appellate presumption of reasonableness for within-Guidelines sentence).

### B.    Discussion

Williams asserts that pursuant to U.S.S.G. § 4A1.3(b)(1), a criminal history category of VI substantially over-represented the seriousness of his criminal history. At the time of his sentencing, Williams had been convicted of two (2) felonies which yield five (5) criminal history points; the balance of the points assessed came from driving offenses and three misdemeanor convictions from 2005. Departures on the basis of "overstated criminal history" fall within the category of "encouraged" factors because the Sentencing Commission has acknowledged that "there may be cases where . . . a defendant's criminal history category significantly over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. §

4A1.3.

The probation officer determined that the defendant's criminal history category was VI. The probation officer assessed seven (7) points related to driving on a suspended license charges, one (1) point each for marijuana possession (two (2) counts) and assault and battery, two (2) points for eluding (felony) and three (3) points for distribution of a controlled substance (felony). The probation officer assessed two (2) points because the defendant was subject to a criminal justice sentence at the time of the instant offense.

Williams maintains that the convictions for driving on a suspended operators' license, marijuana possession and assault and battery over-represent the seriousness of his criminal history. The first convictions counted by probation (possession of marijuana, assault and battery and driving suspended) occurred in excess of ten years prior to Williams' sentencing event. Williams received entirely suspended sentences with respect to the convictions for marijuana possession and assault and battery. Two (2) offenses of driving suspended had occurred nine (9) years prior to sentencing, one (1) occurred eight (8) years prior and one (1) occurred five (5) prior. Williams' most recent conviction for driving on a suspended license in 2015 apparently occurred in the Chesterfield Circuit Court without benefit of counsel *or Williams' presence at trial due to his incarceration*, and yielded him two (2) criminal history points. Admittedly, Williams continued to

20

operate a motor vehicle while not validly licensed. Under certain circumstances, such convictions are excluded from consideration. See U.S.S.G. § 4A1.2(c)(1). Given the age the prior misdemeanor convictions and the fact that they comprise two-thirds of the points assessed, Williams avers that the calculation significantly overstates the seriousness of his criminal record.

At his sentencing hearing, Williams pointed out that his brother, Calvin Russell Williams, had also recently convicted of possession of a firearm by a felon. Information relative to Calvin was contained in Williams' presentence report. While Calvin entered a plea of guilty, thereby receiving credit for acceptance of responsibility, Williams' presentence report indicated that Calvin's "criminal history includes convictions for Eluding Police and Possession of Cocaine, and numerous suspended license convictions." P.S.R. at 19. Despite the apparent similarity of record and an identical offense of conviction, Calvin's criminal history category was determined to be III, and he received a sentence of thirty-seven (37) months. Clearly, Calvin received credit for acceptance of responsibility and his prior conviction was for possession rather than possession with intent. However, there is still a nearly a *five year* difference in sentencing for the identical offense of possession a firearm after being convicted of a felony.

Absent the convictions for driving on a suspended license, marijuana possession and assault and battery, Williams would have had seven (7) criminal

history points, and been determined to be a Category IV. Williams submitted to the trial court that this would have been the appropriate criminal history category and that the appropriate sentence would have been 63-78 months if the base offense level was determined to be 22 and 51-63 months if the base offense level was determined to be 20.

Given the age of the prior misdemeanor convictions, the fact that they were unrelated to the offense of conviction and the apparent disparity between Williams' sentence and that of his brother, who appeared to have a substantially similar prior record, Williams maintains his sentence was unreasonable and that the trial court abused its discretion in sentencing Williams to a sentence of 95 months.

## <u>CONCLUSION</u>

Williams respectfully requests that this Honorable Court reverse his conviction and dismiss the indictment against him. In the alternative, Williams asks that this Honorable Court reverse his conviction and remand this matter for a resentencing on the grounds stated herein.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Williams respectfully requests oral argument if the Court deems it appropriate.

Respectfully submitted,

*/s/ Gregory R. Sheldon*

Gregory R. Sheldon
BAIN SHELDON, PLC
9030 Three Chopt Road
Suite B
Richmond, VA 23229
(804) 282-8625
gsheldon@bainsheldon.com

24

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. _16-4320_          **Caption:** _US v. Jermaine Williams_

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]    this brief contains _____4,954_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]    this brief has been prepared in a proportionally spaced typeface using
   _MS Word 2010_____ [*identify word processing program*] in
   _Times New Roman, 14 point___ [*identify font size and type style*]; **or**

   [ ]    this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) _Gregory R. Sheldon_____

Attorney for_appellant_____

Dated: _8/19/2016_____

# CERTIFICATE OF SERVICE

I certify that on <u>8/19/2016</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

OLIVIA L. NORMAN
OFFICE OF THE U.S. ATTORNEY
919 East Main Street
Suite 1900
Richmond, VA 23219
(804) 819-5475
olivia.l.norman@usdoj.gov

/s/ Gregory R. Sheldon
_____
Signature

8/19/2016
_____
Date